42 F.3d 1386
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Anthony LACY, Defendant-Appellant.
 No. 94-5018.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Sept. 27, 1994.
Decided: Dec. 1, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., District Judge. (CR-93-5)
 Frederick T. Heblich, Jr., PARKER, MCELWAIN & JACOBS, P.C., Charlottesville, VA, for Appellant. Robert P. Crouch, Jr., United States Attorney, Ray B. Fitzgerald, Jr., Assistant United States Attorney, Roanoke, VA, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before HALL and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Mark Anthony Lacy appeals the 188-month sentence he received after his guilty plea to conspiracy to distribute more than fifty grams of crack cocaine, 21 U.S.C.A. Sec. 846 (West Supp.1994). He asserts that the district court clearly erred in finding that at least 1500 grams of crack were attributable to him as relevant conduct. United States Sentencing Commission, Guidelines Manual, Secs. 1B1.3(a), 2D1.1 (Nov.1993). We affirm.
 
 
 2
 Lacy's older brother, Henry ("Packy") Robinson, was the central figure in a crack conspiracy which distributed fifteen to thirty kilograms of crack in Culpeper, Virginia, between 1988 and 1993. After Robinson's guilty plea, he informed authorities that Lacy entered the conspiracy only during the last year. He said Lacy's main contribution was to hold unsold crack overnight when needed, and to accept money from crack sales when Robinson was absent.
 
 
 3
 The government learned from other codefendants that Lacy also held crack for two other conspirators and sold crack himself at times. The probation officer recommended a base offense level of thirty-eight (1500 grams to 5 kilograms of crack) based solely on an estimate that Lacy held a total of 1825 grams of crack during the time he was involved in the conspiracy. This estimate assumed that Lacy held five grams every night for a year.
 
 
 4
 Lacy objected to the recommended amount. At his sentencing hearing, Robinson testified on Lacy's behalf; he said that he generally cut a quarter ounce of crack (7 grams) into two "pins," each consisting of 15-20 plastic bags containing crack which were secured together by a pin. Robinson said Lacy generally kept two or three pins for him, each pin holding only five or six unsold bags. He was vague about how often this happened--"sometimes regularly, sometimes every night for a month." He said that, although Lacy was in the conspiracy for a full year, he had an active role during only part of that time. Robinson estimated that Lacy held a total of two and a half ounces (70.8 grams) during the course of his participation, and that he sold one or two pins, 7 grams at most, on his own.[1]
 
 
 5
 The government countered with evidence from Federal Bureau of Investigation Agent John Zero, who testified that, just after his guilty plea, Robinson said Lacy held two or three pins of 15-20 bags each (not five or six bags) on two or three days a week over a period of a year. This information suggests that Lacy held over 1500 grams (.23 grams (one bag) X 15 bags = 3.45 grams X 3 pins = 10.35 grams per day X 156 days = 1614 grams). Zero also testified that codefendants Lambert and Lightfoot said that Lacy received a part of Robinson's crack to sell.
 
 
 6
 The district court decided that the information Robinson gave on the day of his guilty plea was more credible than the information he provided at Lacy's sentencing, which was more favorable to Lacy. The court found that the probation officer's estimate of 1825 grams might be too high, but that the evidence as a whole supported the recommended base offense level. In other words, the court found that the evidence supported a finding that Lacy had held at least 1500 grams of crack.
 
 
 7
 Lacy contends on appeal that the district court's factual finding was not supported by reliable evidence. Under the sentencing guidelines, the government has the burden of proving the amount of drug attributable to the defendant by a preponderance of the evidence. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir.1993). If the amount recommended by the probation officer is disputed, the district court must resolve the issue by making an independent finding. Id. The government may prove the amount used to set the base offense level in a variety of ways. Id. Here, because a specific amount attributable to Lacy was not alleged in the indictment or established at the guilty plea hearing, and Lacy objected to the probation officer's recommendation, the government was obliged to present evidence at the sentencing hearing to prove the amount.
 
 
 8
 Lacy did not challenge Agent Zero's assertion that Robinson had previously said Lacy regularly held pins consisting of fifteen bags rather than six bags. Given the district court's determination that Robinson's previous testimony was more credible than his testimony at the sentencing hearing, and its implicit finding that Lacy regularly held pins containing fifteen bags of crack rather than six bags, the government's evidence appears to have been sufficient to establish Lacy's involvement with 1500 grams of crack. The district court's factual finding was thus not clearly erroneous.[2]
 
 
 9
 The sentence imposed is accordingly affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Based on this information, the amount of crack Lacy handled would be less than 1500 grams (.23 grams (one bag) X 6 bags = 1.38 grams X 3 pins = 4.14 grams per day X 156 days [3 days a week X 52 weeks] = 646 grams + 7 grams (two pins sold) = 653 grams)
 
 
 [2]
 For a defendant involved in a drug conspiracy, relevant conduct includes not only the amount of drugs he is personally involved with, but also all quantities handled by his codefendants which are reasonably foreseeable to him and which were within the scope of the criminal activity he jointly undertook. USSG Sec. 1B1.3(a)(1)(B), comment. (n.2). For some reason, in this case the probation officer did not suggest what amount of crack may have been reasonably foreseeable to Lacy, the government did not present any evidence on foreseeability, and the district court considered only those amounts with which Lacy was directly involved. A determination of what quantity of crack was reasonably foreseeable to Lacy could only have bolstered the court's finding that Lacy was accountable for between 1500 grams and five kilograms